them." To the same effect is the opinion of Hopkins, J., in Re McEwen [Id. 8,783]. See, also, In re Cooke [Id. 3,170].

Without calling in question the exceptions established by these English cases, which appear to be recognized in the cases last cited, as applicable under our bankrupt law [of 1867 (14 Stat. 517)], it is evident that the fraudulent withdrawal of funds from the firm assets, upon which the exception rests, is a withdrawal fraudulent as against the firm or the other copartners. It is not enough, if the partner withdrawing the money violated no duty towards his copartners in withdrawing it, that he did so with an intent to use it for his private purposes, nor does there seem to be any authority for proof by the firm against the separate estate, when there is no such fraud as against the copartner, even if the firm estate is known to be insolvent at the time and the act is done with knowledge of the insolvency.

In the present case, Berwin had a perfect right, as between himself and May, to withdraw this money. He had not agreed to leave it in the business of the firm for any definite time. It was a loan payable on demand. More than all that he had contracted to leave in the business was left there still. He was the general financial manager of the concern, and had undoubted authority to contract for and to pay off loans to the firm. May's objection merely expressed his displeasure at the act. He had no right to object to the act as in violation of any expressed or implied contract between himself and his partner. Moreover, if it would aid the assignee to show that, when the moneys were withdrawn, Berwin contemplated the winding up of the firm business in bankruptcy or insolvency, or that they must stop, the proof on that point is deficient.

The counsel for the assignee has cited, in support of his claim to prove this debt, certain cases in which the transfer of the partnership assets by the firm to one of the partners when the firm was insolvent, and with design to interfere with the proper and equitable distribution of the assets, as between firm and individual creditors, has been set aside as fraudulent against the firm creditors: Collins v. Hunt [Case No. 3,015]; In re Cook [Id. 3,150]. These cases have no application to the present. They are cases respecting the marshalling of assets as between the joint and separate estates, and not cases touching the right to prove debts as between the joint and separate estates. The principles governing the two classes of cases are distinct, and if the assignee's claim were good under these authorities, it would be not for a dividend as a creditor, but for certain money or property in specie as belonging to the joint estate. But even those cases of marshalling assets, if they afforded an analogy, would not aid the assignee in this case, since the transfer of the firm assets to one

of the copartners, where the firm is known to be insolvent, is not held to be void if made in good faith, though the necessary result of it will be, if the firm's affairs have to be wound up in bankruptcy, that the relative interests of the different classes of creditors will be thereby seriously altered. In re Long [Id. 8,476]: In re Tomes [Id. 14,084]. The assignee has been held estopped by a stipulation entered into by him with this very creditor, George King, and under which stipulation King repaid to him, as assignee of Berwin, certain money which he still retains, from claiming that money as belonging to the joint estate. Whether that stipulation and the proceedings had in this and other courts, since it was given, would also prevent him from proving a dividend against the separate estate of Berwin, thereby taking a part of the money for the joint estate, as is claimed by the counsel for King's executors, is a question that is not be determined, since upon the facts shown the joint estate is not entitled in any event to prove against the separate estate of Berwin for these moneys withdrawn by Berwin, and used by him in paying his own debts. Motion to expunge granted.

---

## Case No. 9,329.

### The MAY.

### [5 Biss. 449.] [1]

District Court, E. D. Wisconsin. Oct., 1873.[2]

PENALTIES—STEAM VESSEL—INSPECTION—SEIZURE OF VESSEL.

A libel of information against a steam vessel, to recover the penalty for not being inspected according to the act of congress to provide for the better security of life on board of vessels propelled in whole or in part by steam, cannot be sustained, if a subsisting seizure of the vessel at the time the libel is brought is not alleged, and which is to be proven at the hearing.

[Cited in The Paolina S., 11 Fed. 173.]

The libel of information, brought by the district attorney in this case, charges that the steam tug May had been employed in towing lumber on the Oconto river into Green Bay in this state, without having been inspected in conformity with the eleventh section of the act of congress, entitled, "An act to provide for the better security of life on board of vessels propelled in whole or in part by steam, and for other purposes," (16 Stat. 440, approved Feb. 28, 1871), and that by reason thereof the owner or owners and master of said steam tug became liable to pay to the United States the sum of five hundred dollars; that for the payment of said sum of five hundred dollars, the said steam tug be-

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 9,330.]

came liable to be seized and proceeded against summarily by way of libel, and for the recovery of which this civil and maritime action is instituted. The objection to the prosecution of this libel of information was the omission of an allegation of a seizure. The first section of the act under which the libel of information is brought provides, that "if any such vessel, 'propelled in whole or in part by steam,' shall be navigated without complying with the terms of the act, the owner or owners thereof shall forfeit and pay to the United States the sum of five hundred dollars for each offense, one half for the use of the informer, and for which sum the steamboat or vessel so engaged shall be liable and may be seized and proceeded against by way of libel."

Levi Hubbell, U. S. Dist. Atty., for United States.

Finches, Lynde & Miller, for respondents.

MILLER, District Judge. By a long course of judicial decisions, it must be regarded as definitely settled that there must be in all cases under the revenue and navigation laws a subsisting seizure at the time the libel or information is brought. See Conk. 252–255. and cases cited, and many others. See Conk. Prac. (4th Ed.) 231. These decisions are pursuant to section 9 of the act to establish the judicial courts of the United States, approved September 24, 1789 (1 Stat. 73, 76), investing the district courts with exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation, or trade of the United States, where seizures are made on waters navigable from the sea by vessels of ten or more tons burthen, within their respective districts as well as upon the high seas. By the section under which this libel is brought it will be observed that the owner of the vessel shall forfeit and pay the penalty, and for the recovery thereof the vessel shall be liable and may be seized and proceeded against by way of libel. The remedy here prescribed for a breach of the law is by seizure and libel.

This libel of information cannot be further prosecuted unless it be amended by alleging a seizure by the proper officer, and which must be proven as alleged.

NOTE. On appeal to the circuit court, Judge Drummond affirmed the above case. Opinion delivered October term, 1874 [Case No. 9,330]. The present statute for the regulation of steam vessels comprises title 52 of the Revision of 1874, p. 857. The section of that act providing for the penalty is as follows (section 4499): "If any vessel, propelled in whole or in part by steam, be navigated without complying with the terms of this title, the owner shall be liable to the United States in a penalty of five hundred dollars for each offense, one-half for the use of the informer, for which sum the vessel so navigated shall be liable, and may be seized and proceeded against by way of libel in any district court of the United States having jurisdiction of the offense."

## Case No. 9,330.

### The MAY.

### The OCONTO.

[6 Biss. 243;[1] 7 Chi. Leg. News, 137.]

Circuit Court, E. D. Wisconsin. Nov., 1874.[2]

PENALTIES—INFORMATION—SEIZURE ESSENTIAL TO JURISDICTION—WHO SHOULD MAKE.

1. In cases of information an actual seizure of the res, prior to the filing of the libel, is essential to the jurisdiction of the federal courts.

[Criticised in The Joshua Leviness, Case No. 7,549. Cited in U. S. v. The Frank Silvia, 45 Fed. 642.]

2. United States Statutes and decisions of the supreme court commented upon.

3. The secretary of the treasury may authorize any United States officer to make the seizure; and in the absence of such authority, it is the duty of the customs officers.

[These were two appeals from decrees of the district court of the United States for the Eastern district of Wisconsin refusing to entertain jurisdiction of libels of information filed by the United States. The opinions of Judge Miller will be found in Cases Nos. 9,329 and 10,421.]

Levi Hubbell, U. S. Dist. Atty.

Wm. P. Lynde, for claimants.

DRUMMOND, Circuit Judge. These are appeals from the district court, and I have, after some hesitation, come to the conclusion that these proceedings were irregular, for the reason that the res was not in either case seized before the libel was filed. The objection taken to the jurisdiction of the court is technical. and my own judgment is opposed to sustaining it; but I think that the decisions of the supreme court have substantially held that there should be in such cases as this, before the libel is filed, a seizure made by the proper officer, and I will state why I have come to the conclusion that these decisions must control in these cases.

The act of 1789 gave exclusive jurisdiction to the district court in all cases of seizure. The language is: "All seizures under laws of imposts, navigation or trade of the United States, where the seizures are made on waters which are navigable * * * within their respective districts as well as upon the high seas." 1 Stat. 77.

It will be observed it refers to all cases of seizure under the laws of navigation or trade, as well as of imposts. The principle is stated, and the authorities cited in section 301 of Benedict's Admiralty, in which it is said that "an open, visible seizure by an officer of the government authorized by law to seize, must precede the commencement of judicial proceedings. The seizures are usually made by the revenue officers, or by the commanders of armed vessels on the high seas." The lead-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirming Cases Nos. 9,329 and 10,421.]